UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

FILED
SEP 09 2013

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR. 13-30010(02)-RAL |
| Plaintiff, | |
| -vs- | REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTION TO SUPPRESS |
| KAMELIA NO MOCCASIN, a/k/a Kamelia Shoulders, | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## SUMMARY

Tragedy struck one summer morning two years ago when an infant was found dead in her parents' bed. The parents were suspected of being the culprits or at least of having a hand in their daughter's death. Investigators talked to the child's mother, Kamelia No Moccasin, a/k/a Kamelia Shoulders, about what transpired on several occasions. During these conversations, No Moccasin made statements and submitted to a polygraph examination, all of which she now seeks to suppress. Because the statements were legally obtained, but reference to the examination and its results is not admissible, the Court recommends that No Moccasin's suppression motion be granted in part and denied in part.

# FACTUAL BACKGROUND

Shortly before 8:00 a.m. on August 14, 2011, Rosebud Sioux Tribal Police received a call that there was an unresponsive infant at a residence located about two and-a-half miles west of Mission, South Dakota. Upon arrival, tribal police found C.R.B., an 8-month old child, dead and notified federal authorities of the same. A preliminary investigation, conducted later in the day, revealed that No Moccasin and Nathaniel Red Bird, were sleeping with C.R.B. the night before and may have been responsible for the child's death.

Steven Pettyjohn and Robert Sedlmajer, FBI and tribal special agents respectively, interviewed No Moccasin the following morning, August 15, 2011, at the Rosebud Police Department. At the time, she was in custody, having been arrested for tribal contempt (violating her bond in a pending criminal case). She made statements before the interview began and after being advised of and waiving her *Miranda* rights. She also provided a summary taped statement.

That same afternoon (August 15), No Moccasin made her initial appearance and was arraigned in tribal court on a child neglect charge. Accompanied by two lay advocates from the tribal public defender's office, she pled not guilty to the charge and was released on a $250 suspended cash bond and various conditions. About seven months later, with Sarah Harris (a tribal defender and licensed attorney) at her side, she pled no contest to the charge and was sentenced.

No Moccasin was again interviewed outside of her residence in Parmelee, South Dakota, on September 20, 2011. The interview took place in Agent Pettyjohn's vehicle and

2

Sam Mautz, another FBI agent, witnessed the same. She agreed to talk to the agents and followed them out to the vehicle and got in. Because of the preliminary autopsy report (which showed C.R.B. died of a skull fracture), the agents did not consider No Moccasin to be a suspect and did not Mirandize her. After speaking to the agents for less than a half an hour and declining to provide them with a taped statement, No Moccasin exited the vehicle and did not return.

On September 11, 2012, after almost a year had passed, Agent Pettyjohn called No Moccasin in Rapid City, South Dakota, and asked her if she was willing to take a polygraph examination as she had said she would at an earlier point in time. During the telephone conversation, she expressed concern about losing a child she had recently regained custody of and having her new four month old infant (who she and Red Bird had together) taken away from her. She nonetheless agreed to submit to a polygraph at the Rapid City FBI office on November 7, 2012.

No Moccasin arrived, on her own, for the polygraph examination around 9:00 a.m. She signed an advice of rights form, acknowledging that she understood her rights and was willing to answer questions without an attorney present. She also signed a consent to interview with polygraph and agreed to submit to the examination. When FBI Agent Mark Sitko, the polygrapher, confronted her about the cause of C.R.B.'s head injuries, No Moccasin insisted that she did not hurt the child's head and did not see Red Bird or anyone else do so. Following this, she terminated the interview, walked out of the room and departed without incident.

Approximately two months afterwards, No Moccasin and Red Bird were charged, by federal indictment, with involuntary manslaughter in violation of 18 U.S.C. §§1153, 1112 and 2. Red Bird subsequently pled guilty to this offense and was sentenced. No Moccasin, however, has persisted in her not guilty plea and is scheduled for a jury trial next month.

## DISCUSSION

### A. August 15, 2011 Statements

### 1. Voluntariness

No Moccasin first claims that her statements made on August 15 to Agents Pettyjohn and Sedlmajer were involuntary. She seeks to have the statements excluded as trial evidence under the Fifth Amendment.

Due process requires that incriminating statements or "confessions" be voluntary.[1] A statement is voluntary if it is "the product of an essentially free and unconstrained choice by its maker."[2] Conversely, "[a] statement is involuntary when it [is] extracted by threats, violence, or express or implied promises sufficient to overbear [the suspect's] will and critically impair [her] capacity for self-determination."[3]

---

[1] See Brown v. Mississippi, 297 U.S. 278, 285-86 (1936); United States v. Aldridge, 664 F.3d 705, 712 (8th Cir. 2011); see also Schneckloth v. Bustamonte, 412 U.S. 218, 225-26 (1973) (a voluntary confession may be used against a suspect, but an involuntary one offends due process).

[2] Schneckloth, 412 U.S. at 225.

[3] United States v. LeBrun, 363 F.3d 715, 724 (8th Cir. 2004) (en banc), cert. denied, 543 U.S. 1145 (2005); see also Aldridge, 664 F.3d at 715 (the test for determining voluntariness is "whether, in light of the totality of the circumstances, pressures exerted on the

(continued...)

The totality of the circumstances must be considered when determining whether a statement was made voluntarily.[4] When doing so, a court must focus on two factors: the conduct of the agents and the characteristics of the suspect.[5] The Government bears the burden of persuasion and must prove, by a preponderance of the evidence, that the challenged statements were voluntary.[6]

The Court has scrutinized the record evidence now before it with these precepts in mind. In the process, the Court has evaluated the conduct of the agents and No Moccasin's ability to resist pressure and inducements brought to bear on her. Having considered all of the factors relevant to the voluntariness inquiry, the Court concludes that the requisite coercive or overreaching conduct necessary to render No Moccasin's statements involuntary was lacking. Several facts support this conclusion.

No Moccasin was 27 years old at the time of the interview, had her GED and one semester of college education. She was advised of her *Miranda* rights, waived them and agreed to talk to the agents about what happened the previous night. The interview was not lengthy – 30 to 60 minutes – and the agents spoke to her in a calm and compassionate manner.

---

[3](...continued)
suspect have overborne [her] will").

[4]See *LeBrun*, 363 F.3d at 727; *Wilson v. Lawrence County*, 260 F.3d 946, 952 (8th Cir. 2001).

[5]See *LeBrun*, 363 F.3d at 724.

[6]See *United States v. Boslau*, 632 F.3d 422, 429 (8th Cir. 2011); *United States v. Astello*, 241 F.3d 965, 966 (8th Cir.), *cert. denied*, 533 U.S. 962 (2001).

Significantly, at no time did the agents make promises or threaten No Moccasin or use any force or pressure to get her to talk. She cooperated with the agents, volunteering information before being Mirandized and providing them with a taped summary statement.

No Moccasin's responses to questions from the agents were logical and understandable. While with the agents, she was not under the influence of alcohol or drugs and nothing she said or did indicated she suffered from any mental or physical infirmity.

Although she was crying and upset during the interview – because of the loss and premature death of her daughter – she nonetheless continued her conversations with the agents, telling them all that she could remember and blaming herself for C.R.B.'s demise. No strong-arm tactics, deceptive stratagems or coercive techniques were used to prey on No Moccasin's emotional state of mind or to get her to confess. Instead, the agents were gentle and kind and allowed her to tell them what she recalled at her own pace.

This is not one of those "rare" instances in which a suspect, after being properly advised of her *Miranda* rights and waiving them, failed to make an open and autonomous decision to speak with probing agents and incriminate herself.[7] No Moccasin's forlorn statements, while empathetic, were nonetheless voluntary.

---

[7] *See Dickerson v. United States*, 530 U.S. 428, 444 (2000).

## 2. Miranda Waiver

No Moccasin next claims that her *Miranda* waiver was invalid. Specifically, she contends that she did not knowingly, voluntarily and intelligently waive her rights.

There are "two distinct dimensions" to the inquiry into whether a suspect's waiver of her *Miranda* rights was valid.[8] First, the waiver "must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception."[9] Second, the suspect must have waived her rights "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."[10] The totality of the circumstances must be considered when determining the validity of the waiver.[11]

The same analysis concerning the voluntariness of a suspect's statements under the Fifth Amendment applies to determine whether the suspect's *Miranda* waiver was voluntary.[12] Under either analysis, "absent evidence that the [suspect's] will [was]

---

[8] *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

[9] *Id.*

[10] *Id.*

[11] *See id.*

[12] *See United States v. Makes Room For Them*, 49 F.3d 410, 415 (8th Cir. 1995) (a court must consider the conduct of the police when determining whether the defendant's will was overborne with regard to either his confession or his *Miranda* waiver).

7

overborne and [her] capacity for self-determination critically impaired because of coercive police conduct", a waiver of *Miranda* rights will be considered voluntary.[13]

The Court has already determined that Agents Pettyjohn and Sedlmajer did not threaten or intimidate No Moccasin in any way to obtain her statements and that there was no coercion or overreaching. She was read her rights and made a deliberate choice to relinquish them and speak with the agents.

With respect to the second inquiry, the written waiver No Moccasin signed itself constitutes strong evidence that she had a clear understanding of her rights and gave them up.[14] So too does the fact that she was conversant in the English language, had her GED and had taken at least one semester of college classes. Agent Pettyjohn read out loud to No Moccasin the advice of rights form. She then audibly read the waiver portion of the form and signed it, affirming that she understood her rights and was willing to proceed with the interview without the assistance of an attorney.

Importantly, No Moccasin never invoked any of her rights during the interview, freely answering the questions posed to her. And she was willing to reiterate what she had earlier said to the agents in a taped statement.

It is true that No Moccasin had been drinking prior to the interview. But that was about 27 hours beforehand and there is nothing in the record that indicates she was

---

[13]*Colorado v. Spring*, 479 U.S. 564, 574 (1987).

[14]*See North Carolina v. Butler*, 441 U.S. 369, 373 (1979) ("an express written ... statement of waiver of the right to remain silent or the right to counsel is usually strong proof of the validity of that waiver").

8

incapable of waiving her rights because she was intoxicated, hung over or sleep deprived. She did not exhibit any detectable impairment and was cognizant enough of her situation and what had just occurred. At no time did she say or suggest that her alcohol consumption or lack of sleep in any way affected her ability to comprehend and appreciate her rights, what Agent Pettyjohn had said to her about them or the implications of what she had agreed to do.

The evidence establishes, to the Court's satisfaction, that No Moccasin understood her rights and knowingly, voluntarily and intelligently waived them. Having done so, her statements are admissible at trial.

## B. September 20, 2011 and September 11, 2012 Statements

No Moccasin additionally claims that her statements on September 20 and, nearly a year later, on September 11, should be suppressed because the agents never advised her of her *Miranda* rights. She says that she was in custody when the agents questioned her about C.R.B. and that she was thus entitled to a *Miranda* advisement before they interviewed her.

Law enforcement officers are not required to administer *Miranda* warnings to everyone whom they question.[15] Instead, warnings are only mandated when there has been a restriction on a person's freedom as to render her "in custody".[16]

---

[15] *See Oregon v. Mathiason*, 429 U.S. 492, 495 (1977).

[16] *Id.*

9

The paramount question in the custody determination is simply whether there was "a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."[17] "Two discrete inquiries are essential to this determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt [ ] she was not at liberty to terminate the interrogation and leave."[18] In answering this question, a court must look at the totality of the circumstances and base its decision "on the objective circumstances of the interrogation, not the subjective views harbored by either the interrogating officers or the person being questioned." [19]

The September 20 interview took place in Agent Pettyjohn's vehicle parked outside of No Moccasin's residence. While her movement was somewhat limited (because she was in a vehicle), she was never handcuffed, physically restrained or locked in the vehicle. Admittedly, the agents did drive to No Moccasin's home and initiated contact with her there. But she agreed to talk to them in the vehicle and did so. The agents did not employ any rubber hose tactics to get her to talk or inculpate herself. She was asked, but declined, to provide a taped statement and the agents accepted this. The interview was rather brief

---

[17]*California v. Beheler*, 463 U.S. 1121, 1125 (1983) (*per curiam*) (internal quotation omitted).

[18]*Thompson v. Keohane*, 516 U.S. 99, 112 (1995) (footnote omitted).

[19]*LeBrun*, 363 F.3d at 720 (*quoting Stansbury v. California*, 511 U.S. 318, 322-23 (1994)).

10

– lasting no more than 30 minutes – and the agents did not arrest her at the conclusion of it.[20]

The communication on September 11 occurred over the telephone. No Moccasin was in Rapid City and Agent Pettyjohn in Pierre at the time. She was not under or subject to arrest and her freedom to end the call – by simply hanging up – or to go to another location was not restricted in any way whatsoever. The only question Agent Pettyjohn asked her was whether she was willing to take a polygraph examination.

Taking into consideration the totality of the circumstances, a reasonable person in No Moccasin's position would not have understood that she was in custody either while in Agent Pettyjohn's vehicle on September 20 or during her long distance telephone conversation with him, on September 11. The agents, therefore, were not required to warn No Moccasin – before speaking with her – of her Fifth Amendment privilege against self-incrimination and the right to the assistance of counsel as required by *Miranda*.[21]

## C. Sixth Amendment Right to Counsel

At the time of the September 20 interview, No Moccasin had been charged with the tribal offense of child neglect (an offense that arose out of the same facts as her federal one),

---

[20] *See United States v. Galceran*, 301 F.3d 927, 931 (8th Cir. 2002) (observing that the lack of an arrest is a "very important factor weighing against custody").

[21] *See Beheler*, 463 U.S. at 1123; *United States v. Plumman*, 409 F.3d 919, 924-25 (8th Cir. 2005); *United States v. Bordeaux*, 400 F.3d 548, 559-60 (8th Cir. 2005); *United States v. Brown Thunder*, CR. 11-30113-RAL, 2012 WL 5833542 at *6 (D.S.D. Oct. 22, 2012), *report and recommendation adopted*, 2012 WL 5834382 (D.S.D. Nov. 16, 2012).

had made a court appearance on the tribal charge and was being represented by the tribal public defender's office. She claims now that Agents Pettyjohn and Mautz's interrogation of her, without notice to or in the presence of her tribal defender, infringed on her Sixth Amendment right to counsel.

In this context, the Eighth Circuit has instructed courts to look at a number of factors when called upon to determine if a defendant's Sixth Amendment rights have been violated.[22] These factors include the following:

1. Whether the tribal and federal cases charge the same offense (which in turn requires a determination of whether each offense requires proof of a fact which the other does not);[23]

2. Whether the defendant had a right to an attorney in the tribal proceedings and asserted this right, whether the proceedings were adversarial in nature and whether the federal interrogators, by virtue of working in tandem with tribal authorities, knew of the proceedings and the defendant's representation;[24] and

3. Whether the defendant's tribal attorney was licensed by a federal or state bar association, as opposed to being a "lay advocate".[25]

Here, there is no identity of offenses. The tribal and federal charges do not have the same elements or proof requirements.[26] Nor did federal agents know, at the time of the

---

[22]*See United States v. Red Bird*, 287 F.3d 709, 713-16 (8th Cir. 2002).

[23]*See id.* at 714-15.

[24]*See id.*

[25]*Id.* at 714; *United States v. Killeaney*, CR. 07-30063-01-KES, 2007 WL 4459348 at **4-9 (D.S.D. Dec. 17, 2007).

[26]*See and compare* Rosebud Law & Order Code §5-8-4 (found at Dkt. No. 80, Ex. C)
(continued...)

September 20 interview, that No Moccasin had been charged with child neglect in tribal court[27] and that she was represented by a state-licensed attorney on that charge. Notably, tribal court records, produced after the fact, reflect that No Moccasin was present with lay advocates at her August 15, 2011 arraignment and November 30, 2011 pretrial conference and that Attorney Harris did not appear with No Moccasin until the change of plea and sentencing hearing held on March 6, 2012.[28] Regardless, tribal officers did not do any follow-up investigation into the death of C.R.B. or work with their federal counterparts on the case after August 15, 2011.[29]

The burden of proving a Sixth Amendment transgression rests with No Moccasin.[30] She has failed to carry her burden and prove that the necessary prerequisites for a Sixth Amendment violation exist in this case.[31]

---

[26](...continued)
*with* 18 U.S.C. §1112.

[27] *See* Mtn. Hrg. Tr. 97-98 (July 23, 2013).

[28] *See* Dkt. No. 80, Ex. B.

[29] *See* Mot. Hrg. Tr. 16, 25, 76.

[30] *See Kuhlmann v. Wilson*, 477 U.S. 436, 459 (1986); *Moore v. United States*, 178 F.3d 994, 999 (8th Cir.), *cert. denied*, 528 U.S. 943 (1999).

[31] *See United States v. Chase Alone*, CR. 11-50031-JLV, 2011 WL 2708732 at \*\*3-4 (D.S.D. July 12, 2011); *United States v. Cottier*, CR. 08-50050-AWB, 2009 WL 473236 at \*\*3, 15-16 (D.S.D. Feb. 24, 2009); *see also United States v. Tools*, CR. 07-30109-01-KES, 2008 WL 2595249 at \*\*5-8 (D.S.D. June 27, 2008); *United States v. Dupris*, 422 F.Supp. 2d 1061, 1068-69 (D.S.D. 2006).

## D. November 7, 2012 Polygraph Examination and Statements

Lastly, No Moccasin seeks to suppress the fact that a polygraph examination was administered to her on November 7 as well as the statements she made before and after the examination. She claims that polygraph evidence is unreliable, not relevant and even if marginally relevant, is more prejudicial than probative and should be excluded under Federal Rule of Evidence 403. She also asserts that her statements, both prior and subsequent to the examination, should be excluded because she did not knowingly, voluntarily and intelligently waive her *Miranda* rights.

No Moccasin's polygraph suppression claim, while perhaps more appropriately the subject matter for a motion in limine, has broad support in the case law of the Supreme Court and Eighth Circuit. For this reason and for expediency, the Court will address the claim now and not defer it.

Fifteen years ago, the Supreme Court held that polygraph evidence is of questionable reliability and that the President did not act arbitrarily or disproportionately in promulgating a rule barring all polygraph evidence.[32] The Eighth Circuit later affirmed the exclusion of polygraph evidence under Rule 403 based on the collateral nature of such evidence and the confusion it would likely create if admitted at trial.[33] While polygraph evidence may not be *per se* inadmissible in the Eighth Circuit and could potentially be

---

[32]*See United States v. Scheffer*, 523 U.S. 303, 309-12 (1998).

[33]*See United States v. Waters*, 194 F.3d 926, 930 (8th Cir. 1999).

admitted even in the absence of a stipulation,[34] the Court believes that such evidence, if allowed, would be unduly prejudicial and should accordingly be excluded in this case. Such a view is in accord with established Supreme Court and Eighth Circuit precedent and that of this district.[35]

No Moccasin's statements though, made in conjunction with the polygraph examination, are another story. She traveled to and arrived for the polygraph examination on her own. She was advised of her rights, waived them and consented to the examination. At the time, she was not under the influence of alcohol or drugs or under any mental duress. Her educational background and knowledge of the English language, her prior experiences with the criminal justice system and her decision to terminate the interview and leave collectively demonstrate that her will was not overborne and that she was fully aware of her rights and invoked one or more of them. Although it is not clear what exactly took place in the examination room (because Agent Sitko did not testify), No Moccasin's actions and conduct indicate that she knowingly, voluntarily and intelligently waived her *Miranda* rights before being questioned and making statements to Agent Sitko on November 7.

---

[34]*See United States v. Rouse*, 329 F.Supp.2d 1077, 1083 (D.S.D. 2004), *aff'd*, 410 F.3d 1005, 1011 (8th Cir. 2005).

[35]*See Scheffer*, 523 U.S. at 309-17; *United States v. Gianakos*, 415 F.3d 912, 925 (8th Cir.), *cert. denied*, 546 U.S. 1045 (2005); *Waters*, 194 F.3d at 930-31; *Rouse*, 329 F.Supp.2d at 1083-86.

## CONCLUSION

All of No Moccasin's statements, made on August 15, 2011, September 20, 2011, September 11, 2012 and November 7, 2012, may be used by the Government as evidence in its case-in-chief at trial. But the Government may not make any reference during the trial to the November 7 polygraph examination or any conclusions derived from it.

## RECOMMENDATION

Accordingly, it is hereby

RECOMMENDED that No Moccasin's Motion to Suppress[36] be granted in part and denied in part for the reasons, and based on the authorities, stated herein.

## NOTICE

An aggrieved party must filed written objections, within 14 calendar days, to challenge this Report and Recommendation before the assigned United States District Judge.[37]

Dated this 9th day of September, 2013, at Pierre, South Dakota.

BY THE COURT:

*[signature]*

MARK A. MORENO
UNITED STATES MAGISTRATE JUDGE

---

[36] *See* Dkt. No. 59.

[37] *See* 28 U.S.C. §636(b)(1).