FILED
SEP 26 2013
CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | \* | CR 13-30010-RAL |
| Plaintiff, | \* | |
| | \* | OPINION AND ORDER |
| -vs- | \* | ADOPTING REPORT AND |
| | \* | RECOMMENDATION AND |
| KAMELIA NO MOCCASIN, | \* | DENYING MOTION |
| | \* | TO SUPPRESS |
| Defendant. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

A grand jury indicted Defendants Kamelia No Moccasin and Nathaniel Red Bird on one count of involuntary manslaughter and aiding and abetting one another in the commission of involuntary manslaughter in violation of 18 U.S.C. §§ 1153, 1112, and 2. Doc. 1. No Moccasin filed a Motion to Suppress, Doc. 59, certain statements she made during two interviews with law enforcement agents, any statement that was made during a phone call with law enforcement agents, and the results from and testimony concerning a polygraph test that she took. Doc. 60. The Government opposed No Moccasin's Motion to Suppress statements from the interviews and the phone call. Doc. 63. The Government agreed not to introduce evidence of the polygraph results, but reserved the right to introduce certain statements elicited during a short interview that occurred directly after the polygraph concluded. Doc. 63-2 at 14; Mot. to Suppress Hr'g Tr. 77-78 (July 23, 2013).

Magistrate Judge Mark A. Moreno held an evidentiary hearing on July 23, 2013, during which he received nine exhibits into evidence and heard testimony from two law enforcement

officers. Doc. 67. On September 9, 2013, Judge Moreno issued a Report and Recommendation recommending that No Mocassin's motion be granted in part and denied in part. Doc. 83. Copies of the Report and Recommendation were served upon the parties as required by 28 U.S.C. § 636. No Moccasin filed Objections to the Report and Recommendation, Doc. 90, on September 23, 2013.

This Court reviews a report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1), which provides in pertinent part that "[a] judge of the [district] court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." No Moccasin makes objections to both Judge Moreno's findings of fact and conclusions of law. Doc. 90. This Court has conducted a de novo review of the record and proposed findings, adopts the Magistrate Judge's Report and Recommendation subject to any changes addressed herein, and denies No Moccasin's Motion to Suppress.

I.  **Tribal Court Representation and Sixth Amendment Objections**

No Moccasin first objects to how Judge Moreno characterized the status of her legal representation at her initial appearance in tribal court. Doc. 90 at 2. No Moccasin's factual objection leads into her legal objection to the Report and Recommendation arguing that her statements at the September 20, 2011 interview must be suppressed because she was represented by state-licensed counsel at the time and questioned in violation of her Sixth Amendment right to counsel. Doc. 90 at 7-8. The Report and Recommendation states that No Moccasin made her initial appearance at an arraignment on August 15, 2013, accompanied by two lay advocates from the tribal public defender's office where she pleaded not guilty to a tribal child neglect charge and was released on bond. Doc. 83 at 2. The Report and Recommendation states that seven months after her initial appearance and

arraignment, No Moccasin pleaded no contest to child neglect in tribal court with Sarah Harris, a tribal defender and state-licensed attorney, by her side. Doc. 83 at 2. No Moccasin objects to the Report and Recommendation's characterization, arguing that she was appointed a state-licensed attorney at her initial appearance and her initial appearance "constituted an adversarial judicial proceeding" for Sixth Amendment purposes. Doc. 90 at 2. It is not disputed that the initial appearance constituted an adversarial judicial proceeding for Sixth Amendment purposes.

After the suppression hearing, the parties updated the record with a Factual Stipulation ("the Stipulation"), Doc. 80. The Stipulation states that:

> 2. The Government and the Defendant agree to supplement the factual record of the Suppression hearing as follows:
>
> a. On August 15, 2011, at approximately 2:00 PM, Kami No Moccasin was arraigned in Rosebud Sioux Tribal Court and was appointed an attorney that is licensed by the State of South Dakota (See Exhibit A and B).
> b. Ms. No Moccasin was charged in tribal court with child neglect (Exhibit C).
> c. Kami No Moccasin was represented by this attorney in tribal court until the tribal criminal case concluded March 6, 2012.

Doc. 80 at 1. Exhibit A is a letter from Sarah Harris, Assistant Public Defender with the Rosebud Sioux Tribal Court's Office of the Public Defender, to No Moccasin's Counsel in which Harris writes that No Moccasin was arrested on August 14, 2011, charged with child neglect, and the Rosebud Sioux Tribal Public Defender's Office "began representation of Ms. No Moccasin at the time of her arraignment on August 15, 2011." Doc. 80 at 3. Exhibit B is a docket report from the Rosebud Sioux Tribal Criminal Court documenting that No Moccasin appeared at her August 15, 2011 arraignment with Lisa White Pipe, not Harris. Doc. 80 at 4. Exhibit B then notes No Moccasin

later appeared with Amanda Wilbur and Lisa White Pipe at her pre-trial conference on November 30, 2011. Doc. 80 at 4. No Moccasin finally appeared with Harris on March 6, 2012, where she pleaded no contest to the tribal child neglect charge. Doc. 80 at 4. It is unclear in the record whether Lisa White Pipe or Amanda Wilbur are South Dakota state-licensed attorneys or lay advocates. Thus, it is unclear whether the Report and Recommendation's characterization of who appeared with No Moccasin at her initial appearance and arraignment is correct, but it appears that the record indicates the parties stipulated that No Moccasin was appointed state-licensed counsel at the initial appearance.

Although No Moccasin was represented by state-licensed counsel at the tribal court initial appearance, the Report and Recommendation's conclusion that her Sixth Amendment right to counsel was not violated by an interview after her arraignment in tribal court pursuant to United States v. Red Bird, 287 F.3d at 709 (8th. Cir. 2002) remains correct. In Red Bird, the defendant was arrested on tribal rape allegations, arraigned in tribal court on rape charges, and appointed a state-licensed attorney. Id. at 711. Tribal investigators informed the FBI about the rape allegations, and the FBI began to investigate in conjunction with tribal investigators. Id. at 714. An FBI agent, assisted by a tribal investigator, contacted the defendant to interview him regarding the same rape allegation pending in tribal court, the FBI agent knew of the pending tribal rape charges and of the defendant's legal representation, yet the FBI agent and tribal investigator nevertheless interviewed the defendant about the rape allegations without his counsel present. Id. 711-12, 714. A federal grand jury subsequently indicted the defendant for rape and the elements of the federal offense and the elements of the tribal offense were "identical." Id. at 715. The United States Court of Appeals for the Eighth Circuit held that the interview was conducted in violation of the defendant's Sixth

Amendment right to counsel. Id. at 714-15.

Here, in contrast to Red Bird, even if No Moccasin was represented by a state-licensed attorney at her initial appearance in tribal court on child neglect charges, her Sixth Amendment right to counsel was not violated. "The Sixth Amendment right to counsel is offense specific." Id. at 714-15. The tribal court child neglect offense does not share the same elements with a federal involuntary manslaughter offense. Compare Doc. 80 at 5 with 18 U.S.C. § 1112. FBI Special Agent Steven Pettyjohn was aware that No Moccasin had been in jail after the death of her daughter when he first interviewed her on August 15, 2011, because she came from jail. But Special Agent Pettyjohn testified that, unlike in Red Bird, he was unaware at the time of the September 20, 2011 interview that No Moccasin had been charged in tribal court with child neglect and that she was represented by counsel in that proceeding. Mot. to Suppress Hr'g Tr. 49, 97-98; see also Red Bird, 287 F.3d at 714 ("This is not a case where the federal agent was unaware of the tribal charge or unaware of the defendant's representation by counsel."); United States v. Chase Alone, No. 11-50031-JLV, 2011 WL 2708732, at *4 (D.S.D. July 12, 2011) (holding that a "lack of knowledge by the FBI agents" of the defendant's representation by counsel "is fatal to the application of Red Bird"). Finally, tribal officials had no participation in the federal investigation after August 15, 2011. See Red Bird, 287 F.3d at 714 (noting that in the case "two sovereigns worked together to investigate conduct that violated the laws of both"). The Report and Recommendation's conclusion that No Moccasin's Sixth Amendment right to counsel was not violated is correct and is adopted as modified.

## II. Remaining Factual Objections

No Moccasin argues in her second objection that the Report and Recommendation fails to

state that FBI Special Agent Pettyjohn thought she was a suspect at the time her September 20, 2011 interview and since she should have been considered a suspect, she should have been given her Miranda warnings. Doc. 90 at 2. However, Special Agent Pettyjohn testified that No Moccasin was not a suspect at that time. Further, whether an agent subjectively considers a person a suspect has no bearing on whether she was "in custody" for Miranda purposes.

No Moccasin argues in her third objection that the Report and Recommendation incorrectly characterized No Moccasin's statement as one in which she was "blaming herself" for the injuries and that such a statement is not supported by the record. Doc. 90 at 2. The testimony from the officers is not explicitly that she blamed herself, but rather that she felt sorry for what had happened and would never hurt her baby on purpose. Mot. To Suppress Hr'g Tr. 10, 49-50. This objection does not undermine how the Report and Recommendation handled the legal issue, and how the Report and Recommendation characterized the testimony will not matter at trial when the officers testify to what No Moccasin actually said.

No Moccasin basically advances a legal argument in her fourth objection. She objects to the Report and Recommendation's characterization of the evidence as devoid of indicia that No Moccasin was drunk, hungover, or too tired and thus incapable of knowingly waiving Miranda rights. Doc. 90 at 2-3. The Report and Recommendation evaluated the totality of the evidence after consideration of the legal standard for providing a voluntary and knowing waiver of Miranda rights, determined that there is not evidence to conclude that she could not waive her rights, and the record supports this conclusion.

No Moccasin argues in her fifth objection about Special Agent Pettyjohn, at the time of the September 20, 2011 interview, not knowing that No Moccasin had been charged with child neglect

and represented by an attorney. Doc. 90 at 3. No Moccasin takes issue with the fact that Special Agent Pettyjohn did not ask whether No Moccasin had an attorney in tribal court proceedings. Doc. 90 at 3. She argues that Special Agent Pettyjohn should have asked whether she had been charged in tribal court because he knew that she had been arrested and had overheard her and Rosebud Sioux Tribe Officer Robert Sadlmajor discussing possible tribal court charges. Doc. 90 at 3. But the record is clear that Special Agent Pettyjohn did not know at the time of the interview about the tribal child neglect charge. Mot. to Suppress Hr'g Tr. 97-98.

Objection Six is that Judge Moreno improperly stated that tribal officers did not participate in any investigation of this case after August 15. Doc. 90 at 3. This objection is overruled because the record shows that tribal officers had no participation in the case after August 15. Mot. to Suppress Hr'g Tr. 16.

### III. Remaining Legal Objections

No Moccasin then makes the same arguments regarding her August 15, 2011 and September 20, 2011 statements that she made before and at the suppression hearing. Doc. 90. The Report and Recommendation addressed these arguments fully and properly. Doc. 83. This Court overrules No Moccasin's objections because the legal conclusions in Judge Moreno's Report and Recommendation are correct and, therefore, are adopted subject to any changes addressed in this Order.

For the foregoing reasons, it is hereby

ORDERED that No Moccasin's Motion to Suppress Statements, Doc. 59, is denied. It is further

ORDERED that the Report and Recommendation, Doc. 83, is adopted subject to any changes

addressed in this Order.

Dated September 26, 2013.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE